# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MCILWAIN, LLC a/k/a TIMOTHY MCILWAIN, Attorney-at-Law<br><br>Plaintiff<br><br>V.<br><br>HAGENS, BERMAN, SOBEL, SHAPIRO LLP, STEVE BERMAN, ESQ., ROBERT B. CAREY, ESQ., LEONARD W. ARAGON, ESQ., and JOHN DOE(S), 1-10 (fictitiously named Defendant(s),<br><br>Defendants. | Case No. 1:17-cv-01257<br><br><br>**MOTION DATE: January 16, 2018** |

## DEFENDANT STEVE BERMAN'S MOTION TO DISMISS OR TRANSFER

Simon B. Paris

Patrick Howard

Charles J. Kocher

**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**

1650 Market Street, 52nd Floor

Philadelphia, PA 19103

Phone: (215) 496-8282

Fax: (215) 496-0999

sparis@smbb.com

phoward@smbb.com

ckocher@smbb.com

Counsel for Defendant Steve Berman

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................1

II.  BACKGROUND ............................................................................................4

    A.   The *Keller* case—litigated for six years in the Northern District of California—results in a landmark recovery for a certified class of NCAA student-athletes. ................................................................................................4

    B.   Plaintiff filed a flawed lawsuit, refused to consolidate his case with the other related matters, resulting in Electronic Arts obtaining summary judgment against Plaintiff's client before discovery was taken ........................5

    C.   The Ninth Circuit affirms the *Keller* decision and the parties, including Plaintiff and his client Hart, engage in settlement discussions until Hart terminates Plaintiff and hires new counsel. ......................................................8

    D.   The parties, including Hart and his new counsel, reach a new settlement and the court resolves all fee disputes. ...........................................................10

III.  ARGUMENT ...............................................................................................12

    A.   This case should be dismissed because the court cannot exercise personal jurisdiction over the defendant. ......................................................................12

        i.   There is no general jurisdiction over Mr. Berman. ..........................13

        ii.   There is no specific jurisdiction over Mr. Berman. ..........................15

    B.   If the Court is not inclined to dismiss Mr. Berman, it should transfer the case to the Northern District of California. .....................................................18

    C.   The allegations in the complaint are insufficient to hold Mr. Berman personally liable. ...........................................................................................20

IV.  CONCLUSION ...........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajax Enterprises, Inc. v. Szymoniak Law Firm, P.A.*,
No. CIV.A. 05-5903 NLH, 2008 WL 1733095 (D.N.J. Apr. 10, 2008) ............14

*Christie v. National Institute for Newman Studies, et al.*,
258 F.Supp.3d 494 (D.N.J. 2017)..........................................................15, 16, 17

*Daimler AG v. Bauman*,
134 S.Ct. 746, 187 L.Ed. 2d 624 (2014).......................................................13, 17

*Elkins v. Grewal*,
No. A-5440-05T1, 2007 WL 1931339 (N.J. Super. Ct. App. Div.
July 5, 2007)............................................................................................14

*FDAsmart, Inc. v. Dishman Pharma. and Chemicals Ltd*
448 N.J. Super. 195, 202-203, 152 A.3d 948, 952 (Sup. Ct. 2016) ..................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915, 131 S.Ct. 2846 (2011)...............................................................13

*Hart v. Electronic Arts, Inc.*,
717 F.3d 141 (3rd Cir. 2013) ...........................................................................7

*Hart v. Electronic Arts, Inc.*,
808 F.Supp.2d 757 (D.N.J. 2011).............................................................*passim*

*Imo Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998) ...........................................................................12

*Job Haines Home for the Aged v. Young*,
936 F.Supp. 223 (D.N.J. 1996).......................................................................19

*Keller v. Elec. Arts, Inc.*,
No. 09-cv-01967, 2010 WL 530108 (N.D. Cal Feb. 8, 2010)....................*passim*

*Lafferty v. St. Riel*,
495 F.3d 72 (3rd Cir. 2007) ...........................................................................19

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation*,
    724 F.3d 1268 (9th Cir. 2013) .................................................................*passim*

*Senju Pharma. Co., Ltd, et al. v. Metrics, Inc., et al.*,
    96 F.Supp.3d 428 (D.N.J. 2015).............................................................12

*United Food & Commercial Workers Union v. Fleming Foods E., Inc.*,
    105 F. Supp. 2d 379 (D.N.J. 2000)..........................................................20

*Walensky v. Jonathan Royce Int'l*,
    264 N.J. Super. 276 (App. Div. 1993) ....................................................19

**Statutes**

28 U.S.C. §§ 1404(a) ...............................................................1, 2, 18, 19

28 U.S.C. §1406(a) ...............................................................................18

N.J. Stat. § 42:1A-18.............................................................................20

Wash. Rev. Code § 25.05.125.................................................................20

**Other Authorities**

First Amendment.................................................................................6, 7, 9

Federal Rule of Civil Procedure 12(b)(2) ..........................................1, 12

Federal Rule of Civil Procedure 23(g)................................................4, 7

# I.   INTRODUCTION

Defendant Steve Berman ("Berman") respectfully moves for an order under Federal Rule of Civil Procedure 12(b)(2) dismissing this case against Defendant Steve Berman for lack of personal jurisdiction or, in the alternative, transferring this case under 28 U.S.C. §§ 1404(a) or 1406(a) to the Northern District of California, where *Keller, et al. v. Electronic Arts, Inc., et al.*, Case No. 09-01967 ("*Keller*")—a certified nationwide settlement class action involving NCAA collegiate athletes—was resolved in 2015, and where Plaintiff's allegations regarding distribution of fees were argued, considered, and adjudicated. If not dismissed for lack of personal jurisdiction or transferred, Berman also seeks dismissal under Rule 12(b)(6) because he cannot be held personally liable for the acts of the corporate co-defendant Hagens Berman Sobol Shapiro,[1] a limited liability partnership.

Plaintiff asserts the same arguments, claims, and relief here as he sought in the *Keller* litigation. Dissatisfied with the ruling in the Northern District of California, Plaintiff sued Mr. Berman, his law firm Hagens Berman Sobol Shapiro LLP (the "Firm" or "Hagens Berman"), and two of Mr. Berman's law partners.

---

[1] Plaintiff misstates and misspells the name of the firm in his caption. Instead of Hagens, Berman, Sobel, Shapiro LLP, it is Hagens Berman Sobol Shapiro LLP.

1

This Court, however, lacks personal jurisdiction over Mr. Berman.[2] First, there is no general jurisdiction over Mr. Berman, a Washington resident. He is not "at home" in New Jersey. Although Mr. Berman has appeared pro hac vice in this venue in other cases against other parties, his contacts with the District are not so "continuous and systematic" as to render him at home in in the District.

Second, there is no specific jurisdiction over Mr. Berman. The acts giving rise to the complaint took place primarily in California, and the California court— to the extent it did not already resolve Plaintiff's claims years ago—retained jurisdiction to resolve any issues related to the class action settlement. The only relevant contact Mr. Berman had with New Jersey was a putative class action filed in New Jersey filed to protect the nationwide class from Plaintiff, a case that was never substantively litigated. Mr. Berman filed a pro hac vice application in connection with the New Jersey case, but the court never ruled on the motion and the case was administratively terminated on September 16, 2014. More importantly, the case has no relation to the causes of action. Plaintiff's causes of action would be the same had Plaintiff never filed the New Jersey action.

---

[2] Mr. Berman seeks to dismiss his case at this time, but alternatively moves to transfer the entire case to the Northern District of California. Plaintiff has not served the other individual defendants, and the Court lacks jurisdiction over them for the same reasons as it lacks jurisdiction over Mr. Berman. Hagens Berman, a Washington corporation will also move to dismiss or, in the alternative transfer to the Northern District of California, in a timely manner. *See* Dkt. 21 (Mot. to Vacate Default Judgment).

Even if there were personal jurisdiction over Mr. Berman, this case should be transferred to the Northern District of California under 28 U.S.C. §§ 1404(a) or 1406(a). The *Keller* litigation was filed in 2009, and final judgment was entered on August 19, 2015. Hagens Berman was appointed lead counsel for the nationwide class of NCAA basketball and football players by the Honorable Claudia Wilken and was commended on the outstanding recovery obtained for the class. The *Keller* Court resolved the fee disputes between the attorneys for the class, including the dispute raised here—that Plaintiff McIlwain is contractually entitled to a portion of the fees even though the contract was never executed or performed—by awarding him a fraction of the fees he requested and, as explained below, admonishing his work on the case. The *Keller* Court retained jurisdiction to resolve all disputes related to the settlement, including the claims raised here. For reasons of judicial comity, fairness to the parties, and efficiency, Defendant respectfully requests the Court transfer this case to Honorable Claudia Wilken in the Northern District of California to allow her to resolve this case. Having presided over the case for over eight years, she is best equipped to resolve the issues raised by Plaintiff.

Last, Hagens Berman is a limited liability partnership, which means Plaintiff cannot hold Mr. Berman liable on Plaintiff's claims against Hagens Berman. At all relevant times, Mr. Berman was acting in his official capacity as a partner in the Firm, and Plaintiff has not alleged anything that would allow Plaintiff to pierce the

corporate veil or otherwise extend liability to Mr. Berman personally. To the extent

Plaintiff is entitled to a recovery, the remedy must come from Hagens Berman, not

Mr. Berman (or the other individuals sued by Plaintiff). Mr. Berman must be

dismissed as a defendant.

## II.    BACKGROUND

**A.    The *Keller* case—litigated for six years in the Northern District of California—results in a landmark recovery for a certified class of NCAA student-athletes.**

On May 5, 2009, Hagens Berman filed *Keller, et al. v. Electronic Arts, Inc.*,

*et al.*, (Case No. 09-01967) in the Northern District of California. This nationwide

class action was the first to allege Electronic Arts, the NCAA, and the Collegiate

Licensing Company used the names, images, and likenesses of college football and

basketball players in videogames without their permission. *Id.* Numerous related

cases followed *Keller*, including several antitrust cases, and each (with the

exception of Plaintiff's case) was consolidated for efficiency in the Northern

District of California and re-captioned *In re NCAA Student-Athlete Name &*

*Likeness Licensing Litigation. Keller* Dkt. 145.

Several firms sought to be named interim lead counsel under Federal Rule of

Civil Procedure 23(g), but the court (with the support of many other firms)

appointed Hagens Berman and Hausfeld LLP as interim co-lead counsel. *Keller*

Dkt. 146. Hagens Berman was given primary responsibility for the right of

publicity claims and Hausfeld LLP was given primary responsibility for the antitrust claims. *Id*. The two firms litigated against well-financed and aggressive defendants as co-lead counsel for five years, eventually recovering $60,000,000 for a nationwide class of student-athletes. The recovery was the first time the NCAA agreed to pay student-athletes for the commercial use of their names, images, and likenesses while still allowing them to compete in NCAA sports. Former Chief Judge of the Northern District, the Honorable Claudia Wilken, commended the Firm for its efforts on behalf of the class in resolving the right of publicity claims. Compl. Ex. B at 20.

**B.    Plaintiff filed a flawed lawsuit, refused to consolidate his case with the other related matters, resulting in Electronic Arts obtaining summary judgment against Plaintiff's client before discovery was taken.**

On June 12, 2009, Plaintiff filed a complaint in the Superior Court of New Jersey against Electronic Arts for using the names, images, and likenesses of former student-athletes Ryan Hart and Troy Taylor. On July 28, 2009, Electronic Arts moved for a more definite statement because the complaint failed to identify which games allegedly contained plaintiffs' likenesses and what attributes constituted their likenesses. *Hart* Dkt. 23 at 2. On October 24, 2009, Plaintiff filed an Amended Complaint ostensibly correcting the errors and dropped Mr. Taylor as a plaintiff. *Id*. Electronic Arts removed the case to federal court and filed a motion to dismiss. *Id*.

The motion to dismiss argued there were insufficient facts detailing the attributes Plaintiff believed were misappropriated. *Id*. at 10. The Honorable Freda L. Wolfson agreed. *Id.* Plaintiff tried to remedy the pleading defect by submitting a declaration from his client but the court rejected Plaintiff's attempt to amend by declaration and granted the motion to dismiss with leave to amend. *Id*. at 10-11.

Notably, Electronic Arts argued that, assuming it had misappropriated student-athletes' names, images, and likenesses, the First Amendment protected its conduct. *Id*. at 16-17. Hagens Berman had already defeated this argument in the consolidated action. *Keller* Dkt. 150. Plaintiff urged the court to adopt the *In re NCAA Student-Athlete Name & Likeness Licensing Litigation* reasoning, but the court refused to consider the defense until the fundamental pleading deficiencies in the complaint were corrected. *Id*. The court, however, agreed to consider the defense "by way of an appropriate motion brought by [Electronic Arts]" after Plaintiff filed his second amended complaint. *Id*.

On October 23, 2010, Plaintiff filed a Second Amended Complaint and Demand for Jury Trial. *Hart* Dkt. 25. Electronic Arts moved to dismiss the second amended complaint or in the alternative enter summary judgment on November 12, 2010. *Hart* Dkt. 31. The Court granted the motion for summary judgment on September 9, 2011, finding Defendant's conduct was protected by the First Amendment. *See Hart v. Electronic Arts, Inc*., 808 F.Supp.2d 757 (D.N.J. 2011).

Hart appealed. Given the potential ramifications of the Court's decision to allow the commercial use of athletes' names, images, and likenesses without their permission or compensation on First Amendment grounds, the players' associations for the major professional leagues hired Michael Rubin of Altshuler, Berzon, Nussbaum & Rubin to file an amicus and assist Plaintiff in litigating the appeal. *Hart v. Electronic Arts, Inc*., 717 F.3d 141 (3rd Cir. 2013); Compl. Ex. B at 7. Mr. Rubin argued the appeal to the Third Circuit and the appellate court reversed and remanded the trial court decision. USCA Opinion *Hart* Dkt, 59. The Third Circuit adopted the *In re NCAA Student-Athlete Name & Likeness Licensing Litigation* reasoning in rejecting Electronic Art's First Amendment defense. *Compare Keller v. Elec. Arts, Inc*., No. 09-cv-01967, 2010 WL 530108 at *3-*5 (N.D. Cal Feb. 8, 2010) with *Hart*, 717 F.3d at 163-169.

On remand, *Hart* was not substantively litigated. *Hart v. Electronic Arts, Inc. et al.* Case No. 09-cv-05990 docket, Exhibit 1. There is no indication Plaintiff served or responded to discovery. Plaintiff never sought appointment as interim lead counsel, or sought to have Mr. Hart appointed interim class representative. *See* Fed. R. Civ. P. 23(g)(3) and (4). Plaintiff, after he was fired and Mr. Hart obtained new counsel, bizarrely attempted to replace Mr. Hart as the class representative, but ultimately withdrew his motion. Dkts. 76, 77, 83, 97. Plaintiff neither submitted a case management schedule nor otherwise attempted to move the case

forward substantively following remand. Ex. 1. The trial court administratively

dismissed the case on September 16, 2014. Dkt. 102.

On August 27, 2013, shortly after remand, Hagens Berman filed *Alston v.*

*Electronic Arts Inc*., in the District of New Jersey (Case No. 13-cv-05157), to

protect the nationwide class in case Plaintiff did something detrimental to the class,

such as attempting to settle without the benefit of the substantial discovery

gathered by co-lead counsel in *In re NCAA Student-Athlete Name & Likeness*

*Licensing Litigation*. The Firm's goal was to consolidate *Alston* with *Hart* and

transfer the consolidated case to the Northern District of California or seek a stay

pending resolution of the nationwide class in the Northern District of California or

at least coordinate the related cases, but this never occurred because Plaintiff failed

to substantively litigate *Hart*. Mr. Berman, and the other individual defendants,

sought pro hac vice admission in *Alston*. These motions were never ruled on by the

court. After filing, *Alston* was handled entirely by William J. Pinilis of Pinilis

Halpern, based in Morristown, New Jersey. *See Alston*, Dkt. 1 (Describing Mr.

Pinilis as "Lead Attorney.").

**C.     The Ninth Circuit affirms the *Keller* decision and the parties, including Plaintiff and his client Hart, engage in settlement discussions until Hart terminates Plaintiff and hires new counsel.**

Co-lead counsel in *Keller* conducted significant discovery while Electronic

Arts pursued its appeal to the Ninth Circuit. Discovery involved all defendants,

named class representatives, and multiple third-parties and took place over the course of several years. Discovery included: (1) taking and defending dozens of depositions, (2) collecting, reviewing, and coding over 257,000 documents, (3) exchanging thousands of e-mails with class members, third-parties, co-counsel, and opposing counsel, (4) resolving dozens of substantive discovery disputes, (5) propounding and responding to hundreds of requests for production, interrogatories, and requests for admission, and (6) generally litigating the case aggressively for over six years. *See, e.g.,* Compl. Ex. B at 4-5 (Order for Attorneys' Fees).

On July 31, 2013, the Ninth Circuit affirmed Judge Wilken's decision rejecting EA's First Amendment defense. *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, 724 F.3d 1268, 1279 (9th Cir. 2013). After remand, the trial court set a trial date for March 23, 2015. Ex. B. at 5. Because the *Keller* Plaintiffs (unlike Hart) engaged in substantive discovery while their case was on appeal, the *Keller* Plaintiffs were prepared to seek class certification and proceed to trial on remand. *Id*. Given the Ninth Circuit decision and impending trial date, the parties mediated with Randy Wulff on September 10, 2013. *Id*. at 9.

During that session, plaintiffs in each case reached a settlement in principle with Electronic Arts and the Collegiate Licensing Company. *Id*. At the mediation, Mr. Hart was represented by Plaintiff. *Id.* Following the mediation, however, "Mr.

Hart rejected the settlement and replaced his counsel [Plaintiff McIlwain], re-hiring

the McKenna Law Firm along with Lum, Drasco & Positan LLC." *Id*.; *see also*

Hart Dkt. 82 Ex. 1 (explaining Plaintiff's failure to tell Hart about the settlement

before Plaintiff approved it, and detailing Plaintiff's failure to communicate about

the settlement after it was allegedly consummated.").

**D.      The parties, including Hart and his new counsel, reach a new settlement
         and the court resolves all fee disputes.**

The right-of-publicity plaintiffs, including Mr. Hart and his new counsel,

began re-negotiating the settlement at a September 10, 2013 mediation, working

closely with the mediator and co-counsel until May 2014, when the final settlement

was filed with the court. *Id*. Negotiations were long and tedious, in part, because

Hart's new counsel had familiarize itself with the complicated procedural, factual,

and legal history of the case. The settlement included an agreement between Hart's

*new* counsel and Hagens Berman to pay the McKenna Law Firm and Lum, Drasco

& Positan LLC (collectively "McKenna Law Firm") $300,000 of any fee received

from the settlement and not to object to the lodestar amount claimed by them in

their fee application to the court. *Id*. Hagens Berman also separately continued to

negotiate with the NCAA, ultimately resolving its case against the NCAA on June

9, 2014. *Id*. at 11.

Six years after filing, the court approved a $60,000,000 settlement for a

nationwide class of student-athletes against the NCAA and Electronic. *Id*.

$40,000,000 was attributable to the settlement with Electronic Arts and the

Collegiate Licensing Company, and $20,000,000 was attributable to the NCAA. *Id.*

Plaintiff sought $4,620,000 in fees from the Electronic Arts recovery, $1,253,200

more than he seeks for the alleged breach of contract here. *Id.* at 13; Compl. ¶¶ 17-

18. To support this claim, he made the exact allegations that support his alleged

breach of contract here:

> Moreover, Mr. McIlwain argues that, while he was
> representing the Hart class, he and Keller Plaintiffs'
> counsel reached an agreement that any fees awarded as
> part of the settlement of the right of publicity claims
> asserted in Hart, Keller and Alston should be split with
> sixty percent of the fees going to Keller Plaintiffs'
> counsel and forty percent going to Mr. McIlwain.

Compl. Ex. B at 17. The court rejected this argument and awarded Mr. McIlwain

$696,700 in fees, substantially less than the $3,026,005 in alleged lodestar and

$4,620,000 he sought. *Id.* at 3, 13. Notably, the Court did not award many of the

fees McIlwain sought to be paid directly to him on behalf of attorneys and staff

who worked with him.  The Court ordered Electronic Arts to pay "individuals on

whose behalf [Plaintiff McIlwain] seeks fees" directly and ordered Plaintiff to

provide "counsel for EA the necessary information for those payments to be

made." *Id.* at fn 16. The court also found Plaintiff's fee petition was "replete with

entries . . . not reasonably related to the litigation or settlement of the case" leading

the Court to "question[] the reliability of his [time] records" and reduce his hourly

billing rate and lodestar by more than seventy percent. *Id*. at 32-48. In total, Mr. McIlwain was only awarded $405,000 for his own work.

When allocating fees between the *Keller* Plaintiffs, represented by Hagens Berman, the Hart Plaintiffs and Plaintiff McIlwain, Hart's former counsel, the court expressly admonished *Hart's* contribution to the common fund:

> The majority of [the remaining $6,000,000 in fees] will be allocated to <u>Keller</u> Plaintiffs' counsel to compensate them for the outstanding result they secured in this case and the risk they faced in litigating it. The court finds little evidence that the <u>Hart</u> litigation contributed to the common fund.

*Id*. at 25; *see also Id*. at 31 (Deducting the amount the *Keller* Plaintiffs agreed to give to Hart's new counsel from the amount due to them because *Hart* did little to contribute to the common fund.).

### III.   ARGUMENT

### A.   This case should be dismissed because the court cannot exercise personal jurisdiction over the defendant.

Mr. Berman should be dismissed from this action under Federal Rule of Civil Procedure 12(b)(2) because Plaintiff cannot meet his burden of showing this court has personal jurisdiction over Mr. Berman. *Imo Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998) (holding plaintiff bears the burden of proving that jurisdiction exists by a preponderance of the evidence.). New Jersey's long arm-statute permits the exercise of jurisdiction to the full extent allowed under the Due

Process Clause. *See Senju Pharma. Co., Ltd, et al. v. Metrics, Inc., et al.*, 96 F.Supp.3d 428, 435 (D.N.J. 2015). Under the due process clause, a court may exercise personal jurisdiction over a defendant under two theories: general jurisdiction and specific jurisdiction. *Id*. Mr. Berman is not subject to neither theory.

### i.      There is no general jurisdiction over Mr. Berman.

General jurisdiction is found when the defendant's contacts with the forum state are "so continuous and systematic as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 2851 (2011). The paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Daimler AG v. Bauman*, 134 S.Ct. 746, 760, 187 L.Ed. 2d 624 (2014). The standard for establishing general jurisdiction "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *FDAsmart, Inc. v. Dishman Pharma. and Chemicals Ltd*., et al., 448 N.J. Super. 195, 202-203, 152 A.3d 948, 952 (Sup. Ct. 2016). (citing *Mishe v. Bracey's Supermarket*, 420 N.J. Super. 487, 492, 22 A.3d 56 (App. Civ. 2011)).

Here, there is no serious argument Mr. Berman is subject to general jurisdiction in New Jersey. Mr. Berman, a Washington resident, is not admitted to practice law in New Jersey, and was not admitted pro hac vice in the underlying case. Mr. Berman, through his law firm, filed the *Alston* case and sought pro hac

vice admission, but the motion was never ruled on by the court. The Firm does not have an office in New Jersey and *Alston*—to the extent it was litigated at all—was primarily handled by local counsel. *See* www.hbsslaw.com/locations (last visited 12/12/2017). Mr. Berman has appeared pro hac vice in other, unrelated cases filed in the forum, but these sporadic, tenuous contacts with the forum are insufficient to confer general jurisdiction over him. *See Ajax Enterprises, Inc. v. Szymoniak Law Firm, P.A.*, No. CIV.A. 05-5903 NLH, 2008 WL 1733095, at *4 (D.N.J. Apr. 10, 2008) ("[P]ro hac vice admission is insufficient to establish general jurisdiction because an attorney's pro hac vice appearance in an unrelated matter in the forum fails to establish general personal jurisdiction.") (quoting *Wolk v. Teledyne Industries, Inc.*, 475 F.Supp.2d 491, 502 (E.D.Pa.2007)); Compl. ¶ 3.

Plaintiff's only other allegation regarding general jurisdiction is that "Defendant Hagens Berman Law Firm engaged in active solicitation of Plaintiff to co-counsel with them in a pending action by contacting him at his law office in Atlantic County, New Jersey." ¶ 4. Assuming this statement is true, there is no allegation Mr. Berman contacted Plaintiff, only that someone from Hagens Berman contacted him. Even if Mr. Berman had contacted Plaintiff directly regarding a co-counsel relationship, this contact is insufficient to show the substantial and continuous contacts with the forum necessary to assert general jurisdiction over Mr. Berman. *See Elkins v. Grewal,* No. A-5440-05T1, 2007 WL 1931339, at *1

14

(N.J. Super. Ct. App. Div. July 5, 2007) (holding that contact via telephone by defendant's attorney was, "insufficient to constitute purposeful conduct to confer specific and personal jurisdiction or continuous systematic contact to confer general jurisdiction.").

For these reasons, there is no general jurisdiction over Mr. Berman.

### ii.      There is no specific jurisdiction over Mr. Berman.

To determine whether there is specific jurisdiction over a non-resident, courts apply a three-part inquiry: "(1) Defendant's activities must be purposely directed at the forum; (2) Plaintiff's claims must arise out of or relate to at least one of those specific activities, and (3) the assertion of jurisdiction must be reasonable or otherwise comport with fair play and substantial justice." *See, e.g., Christie v. National Institute for Newman Studies, et al.*, 258 F.Supp.3d 494, 500 (D.N.J. 2017) (internal citations and quotations omitted).

Here, Plaintiff alleges Mr. Berman breached a contract negotiated and (allegedly) executed in California that peripherally involved the *Alston* and *Hart* cases pending in this district. The fact Plaintiff is located in New Jersey and was allegedly injured in New Jersey is insufficient to support personal jurisdiction as a matter of law. *See, e.g., Burger King*, 471 U.S. at 278, 105 S.Ct.at 2185 (holding: "If the question is whether an individual's contract with an out-of-state party alone

can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

Plaintiff claims Mr. Berman nonetheless subjected himself to jurisdiction by filing suit and seeking pro hac vice admission in the district and by communicating with Plaintiff in New Jersey. These allegations are insufficient to permit jurisdiction over Mr. Berman. First, Mr. Berman's actions were not directed at the forum. *Christie*, 258 F.Supp.3d at 500. The alleged contract was negotiated, by Plaintiff's own admission, in California. The e-mail supposedly consummating the agreement was drafted by Plaintiff's co-counsel in Texas—not New Jersey. Mr. Berman, through his law firm, filed the *Alston* case in New Jersey and sought pro hac vice admission, but the motion was never considered by the court and he never appeared in the case or otherwise litigated in New Jersey. The case was handled by local counsel who is not a party to this suit. The fees at issue are in an escrow governed by the laws of California and any decision to withhold those funds took place in Washington or Arizona where the individual law firm partners are located. In short, there were no meaningful activities purposely directed at New Jersey.

But even if filing *Alston* is considered sufficient activity aimed at the forum, the *Alston* filing did not give rise to the complaint and is therefore insufficient to support jurisdiction over Mr. Berman. *Christie*, 258 F.Supp.3d at 500 (requiring plaintiff's claims to arise out of or relate to the purposeful activities directed at the

16

forum.). Here, the alleged injury arises from an out-of-state contract resolving a nationwide class action in the Northern District of California. *Alston* has nothing to do with Plaintiff's claims. The breach and consequential injury would be the same if *Alston* had never been filed or was pending in another jurisdiction. Because Mr. Berman's conduct giving rise to the complaint occurred entirely outside New Jersey and was not directed at the forum, the fact his conduct affected Plaintiff or cases with connections to New Jersey does not suffice to authorize jurisdiction over him. *Id*. at 1126; *see also National Institute for Newman Studies,* 258 F.Supp.3d 494 at 502 (holding plaintiff must show defendant's tortious conduct was intentionally directed or aimed at the forum.).

Nor is there any allegation in the complaint that Mr. Berman's acts giving rise to the complaint were directed at the forum. There is no allegation Mr. Berman communicated directly with Plaintiff in New Jersey by phone, e-mail, or in-person. The e-mail attached to the complaint was drafted by Plaintiff's co-counsel in Texas and was sent to Mr. Berman. There is an allegation the Firm solicited Plaintiff to enter into an agreement, but there is no allegation that Mr. Berman himself contacted Plaintiff. At most, Mr. Berman received an e-mail from counsel in Texas regarding an agreement made in California. Actions taken by others is insufficient to confer personal jurisdiction. *See Walden*, 134 S.Ct. at 1122 (recognizing suit related contact with the forum state must arise out of contacts the "Defendant

17

*himself*" creates with the forum state.) (citing *Burger King Corp*. 471 U.S. at 475) (emphasis in original). Without tortious conduct giving rise to the complaint that is directed at the forum, there is no basis to assert personal jurisdiction over Mr. Berman. *Id*.

But even if Mr. Berman has sufficient minimum contacts with the forum, it would be unfair to require him to litigate this case in New Jersey. *Christie*, 258 F.Supp.3d at 507-508 (recognizing the assertion of jurisdiction must be reasonable or otherwise comport with fair play and substantial justice.). Plaintiff admits the conduct giving rise to the complaint took place primarily in California. He admits he negotiated the alleged contract in California and communicated with Mr. Berman and the other attorneys in California, Washington, Arizona, and Texas. He has not alleged Mr. Berman actively litigated *Alston*, and expressly alleges it would have been dismissed for lack of standing. Compl. ¶¶ 7, 9. Plaintiff also appeared in *Keller*, seeking the same fees he seeks here, thereby agreeing the Northern District of California has jurisdiction over this dispute or, at least, is the appropriate venue for this dispute. Under these circumstances, fair play and substantial justice requires the court to decline jurisdiction over Mr. Berman.

**B.    If the Court is not inclined to dismiss Mr. Berman, it should transfer the case to the Northern District of California.**

Even if personal jurisdiction could be established over Mr. Berman—and it cannot—the most appropriate venue for this suit is the Northern District of

California. Courts may transfer a federal action under wither 28 U.S.C. §1406(a), which applies when the plaintiff's choice of venue is improper, or §1404(a), which applies when the plaintiff's choice of venue may be proper but another venue is more appropriate. Here, the case may be properly transferred under either statute.

Senior District Judge Claudia Wilken has presided over the consolidated action, *In re: NCAA Student-Athlete Name & Likeness Licensing Litig.,* since 2009. http://www.cand.uscourts.gov/judges/cw/cases/NCAA (last visited 12/12/2017). Judge Wilken is intimately familiar with Mr. McIlwain's claim for fees, having issued a 51-page order addressing the same claims Plaintiff raises here. Compl. Ex. B. Even if Plaintiff's claims are new and not subject to issue or claim preclusion, Judge Wilken is in the best position to efficiently resolve Plaintiff's claims. She has already reviewed the alleged contract between Mr. McIlwain and Defendants, and best understands the complicated history giving rise to this dispute. *Job Haines Home for the Aged v. Young*, 936 F.Supp. 223, 234-235 (D.N.J. 1996) (transferring case under 1404(a) to California where alleged bad acts occurred and because California courts were intimately familiar with the matter and only New Jersey contact was fortuitous circumstance that one party happened to reside in the state.); *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3rd Cir. 2007) (transferring case under §1404(a) to forum where the cause of action arose).

**C.    The allegations in the complaint are insufficient to hold Mr. Berman personally liable.**

Plaintiff has presented no basis for holding Mr. Berman personally liable for Plaintiff's injuries. Mr. Berman's actions alleged in the Complaint were made in his capacity as a partner of Hagens Berman, a limited liability partnership. Even if Hagens Berman is liable (and it is not), there is no basis to pierce the corporate veil and hold Mr. Berman personally liable. *See, e.g., Walensky v. Jonathan Royce Int'l*, 264 N.J. Super. 276 (App. Div. 1993).

Under both Washington and New Jersey law, "an obligation of a partnership incurred while the partnership is a limited liability partnership, whether arising in contract, tort, or otherwise, is solely the obligation of the partnership. A partner is not personally liable, directly or indirectly, by way of contribution or otherwise, for such an obligation solely by reason of being or so acting as a partner." *See* Wash. Rev. Code § 25.05.125.; *see also* N.J. Stat. § 42:1A-18.

Defendant Hagens Berman is and was at all relevant times, a limited liability partnership with its principal location in Seattle, Washington. Compl. ¶ 2. Defendant Berman is a partner in the Hagens Berman law firm. *Id.* ¶ 3. By Plaintiff's own admission, any terms agreed to between Plaintiff and Defendant were between Defendant Hagens Berman Law Firm and Plaintiff. *Id.* ¶ 9. Further, Defendant has made no argument for piercing the corporate veil to hold Defendant Berman personally liable. "As a general rule, the corporate entity should be upheld

unless specific, unusual circumstances call for an exception." *United Food & Commercial Workers Union v. Fleming Foods E., Inc.,* 105 F. Supp. 2d 379, 388 (D.N.J. 2000) (citing, *Zubik v. Zubik,* 384 F.2d 267, 272 (3d Cir.1967), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968)). "A court should disregard the corporate existence only when it appears that a corporation was an artifice and a sham to execute illegitimate purposes and an abuse of the corporate fiction and immunity that it carries." *Id.* (internal citations and punctuation omitted). Here, there is no obligation Hagens Berman corporate structure is a sham or artifice. At all relevant times Defendant Berman acted in his capacity as a partner, not as an individual. Thus, Plaintiff's claims against Defendant Berman in his personal capacity should be dismissed with prejudice.

## IV.   CONCLUSION

For these reasons, the case against Mr. Berman should be dismissed or, in the alternative, transferred to the Northern District of California.

DATED: December 13, 2017            By:  s/ Patrick Howard
                                        Simon B. Paris
                                        Patrick Howard
                                        Charles J. Kocher
                                        **SALTZ, MONGELUZZI, BARRETT**
                                        **& BENDESKY, P.C.**
                                        1650 Market Street, 52nd Floor
                                        Philadelphia, PA 19103
                                        Phone: (215) 496-8282
                                        Fax: (215) 496-0999

sparis@smbb.com
phoward@smbb.com
ckocher@smbb.com

Attorneys for Defendant
Steve Berman

## **<u>CERTIFICATE OF SERVICE</u>**

I, Patrick Howard, hereby certify that on this 13th day of December, 2017, a true and correct copy of Defendant Steve Berman's Motion to Dismiss or Transfer the Complaint was electronically filed using the Court's CM/ECF system and will therefore be served by electronic means via the Court's ECF Notification system upon all counsel of record.

_____
s/ Patrick Howard
Patrick Howard
